## HUNT v. LONGYEAR ET AL.

[No. 10,182. Filed January 6, 1920.]

1. CHATTEL MORTGAGES.—*Priority.—Variance in Description.—Effect.*—Where a mortgage securing bonds issued by a gravel company on its plant was made subject to a prior chattel mortgage covering the mortgagor's plant and equipment, with a provision that the trustee named in the second mortgage pay the first mortgage, the priority of the first mortgage is in no way affected by the fact that its description of the mortgaged premises was not the same as that contained in the second mortgage. · p. 111.

2. PLEDGES.—*Pledge of Collateral to Secure Loans.—Rights of Pledgor.*—Where a bank made a loan to a gravel company on its note secured by the personal indorsement of the vice-president and secretary of the company and by a number of bonds issued by it which were pledged as collateral and were the property of the company's president, and such indorsing officers subsequently increased the amount of the loan, *held* that, the original loan remaining unpaid, the bonds were not released as security because the loan was increased after they were deposited with the bank. p. 111.

From Tippecanoe Circuit Court; *James L. Caldwell*, Judge.

Action by Earl R. Hunt against the Lafayette Gravel and Concrete Company, in which a receiver was appointed and defendant's property sold, and Charles F. Hunt, the First National Bank, Frank H. Longyear and others filed claims to the proceeds of the sale. From the judgment rendered, Charles F. Hunt appeals. *Affirmed.*

*Randolph & Milford* and *Anderson, Parker, Crabill & Crumpacker*, for appellant.

*Parks & Parks, Allen Boulds, William C. Mitchell, Crockett & Turner* and *William S. Potter*, for appellees.

NICHOLS, C. J.—In 1909 the Lafayette Gravel and Concrete Company executed a chattel mortgage upon

its plant and equipment to secure certain notes, or their renewals, and upon which there was due at the time of the judgment appealed from $2,810.87. The notes and mortgage by successive assignments became the property of appellee First National Bank. In 1913 said Gravel and Concrete Company executed another mortgage on said property, the same having been rebuilt, to a trustee to secure fifty bonds, each of the face value of $500, bonds 1 to 31 being involved in this action. This second mortgage was made subject to the said first mortgage and notes as well as to certain other notes and mortgages, which said indebtedness was to be paid by the trustee named in the second mortgage out of the moneys that should come into his hands and which payment would make such second mortgage a first lien on the property therein described. Appellant was president of said gravel company and, as such, executed both of said mortgages. Bonds 1 to 30 were held by appellant, and Nos. 11 to 18 were by him pledged to appellee First National Bank as collateral security for loans aggregating $6,000. There is some dispute as to whether such bonds were pledged for additional loans that were made by said appellee, but this is immaterial, as the $6,000 indebtedness was never paid. Appellee, Longyear's decedent, Earl R. Hunt, whom we assume is inadvertently mentioned in appellant's brief as Franklin M. Hunt, owned No. 31 of said bonds, upon which he brought suit asking for judgment and for the appointment of a receiver. He was given judgment and a receiver was appointed, the property was sold and the proceeds distributed by order of court as follows: First National Bank, on chattel mortgage and notes $2,810.87; and on notes

secured by bonds 11 to 18 $146.10, and to others whose rights are unchallenged.

Appellant contends that nothing should have been distributed to appellee First National Bank upon its chattel mortgage claim for the reason that the

1.  description in such chattel mortgage is not the same as in the mortgage securing the bonds, but, whether the same or not, the second mortgage was made subject to the notes and chattel mortgage securing the same, with a provision that the trustee in the bond mortgage should pay the chattel mortgage notes.

Appellant next contends that his bonds securing the $6,000 were released as such security because the loan was increased to $16,000 after the bonds were

2.  deposited with the bank. The notes representing the $6,000 loan remained, while additional notes were made for the additional $10,000 loan. Whether the bonds secured the additional $10,000 we do not need to decide, but we do not see how the additional loan would invalidate the bonds as security for the $6,000, and the distribution on the bonds only paid a very small portion of the $6,000.

The judgment is affirmed.